## EX PARTE CATO TAYLOR.

### *No. 731.   Decided March 26.*

**County Convict—Pauper's Affidavit—Hiring Out—Statute Construed.—** Where a county convict files his affidavit of inability to pay the fine and costs adjudged against him, the statute, article 816, Code of Criminal Procedure, is mandatory, that the Commissioners Court should hire him out; and upon failure to do so, the convict is entitled to a credit upon the judgment against him of $3 per day for each day he is kept in confinement thereafter, and it is immaterial that he declined or did not wish to hire out. Following Ex Parte Richmond, ante, p. 112.

APPEAL from Special Term of the County Court of Houston County. Tried below before Hon. A. A. ALDRICH, County Judge.

Appellant applied to the county judge for a writ of habeas corpus, praying that he be released and discharged from imprisonment in the county jail, in which he was confined for failure to pay the fine and costs which had been adjudged against him in a misdemeanor case tried by a justice of the peace; and claiming, that he was entitled to his release, because he had laid in jail, after he had filed his affidavit of inability to pay said fine and costs, a sufficient length of time to discharge the same, by credits which the law allowed him for each day he so remained in imprisonment. At the hearing of the habeas corpus, he was refused his discharge and remanded to custody, and from this judgment and order of the court he prosecutes his appeal.

Relator, in his own behalf, testified: "On the 12th day of December, 1894, I was fined, under a plea of guilty, in the Justice Court of Precinct No. 1, Houston County, Texas, the sum of $5, besides cost of suit, amounting to $11.35, and was released the same day, because I was under convict bond for another offense. I was hired to Mr. Smith. On the 17th of February, 1895, I was arrested by the constable and put in jail. I had not paid any of the last fine and costs. I remained in jail until March 1, about eleven days, and then made and filed with the county clerk my affidavit, in writing, of my inability to pay said fine and costs. I did not have any money or property. I had not been offered an opportunity by the Commissioners Court of working out said fine and costs on any public road, street, or any public improvement; and had no knowledge of the authorities trying to hire me to any one, until to-day, when Mr. Daniel and the sheriff came to see me, and asked me if I would go to work for Mr. Daniel, and that he had hired me. I told them my time was out; that I wanted to see my lawyer, and that, unless he said for me to go, I would not. I have been in jail since February 17, 1895."

Cross-examined: "I have not been loafing around the streets here. I hauled wood for Mr. Smith two or three days; that was all the work I did for him while he had me hired under the convict bond. My father paid him part of it for me. Mr. Waller, sheriff, did not come to me after I had been in jail about nine days and tell me that Mr. Daniel would hire me if I would work for him. I did not then refuse to work for Mr. Daniel. No one offered to hire me until I had laid in jail eleven days, and made said affidavit. The next night after that Mr. Mortimer came down to the jail and asked me if I would work for him; that if I would, he would hire me out and I could cut wood for him. I told him my time would be out the next Wednesday, and I would not work for him to pay said fine and costs. On Monday following, Mr. Bynum came and asked me if I would work for him if he would hire me out, and said that if I would go with him and work for him, that he would hire me out. I told him my time would be out the next Wednesday, and I would not work for him to pay said fine and costs, but that after I got out of jail I would work for him at private terms. I did not say, the same day at the jail, that I had paid my last fine and would never pay another one. To-day Mr. Daniel and the sheriff came and told me that Mr. Daniel had hired me, and asked me if I would go with him to work. I told them I would not, and that I wanted to see Mr. Moore, my lawyer. Since I was put in jail I got the officers to make out a convict bond for me, and gave it to John Williams to get filed. Do not know what he did with it."

G. M. Waller, sheriff, testified: "On the 27th of last February I asked Mr. I. A. Daniel if he would hire defendant. He said he would hire him out if Cato would work for him, and got me to ask him. I went back to jail and asked Cato if he would work for Mr. Daniel if he would hire him. And he said no, he would not; that he had paid

his last fine in Houston County, and never intended to pay another one. I heard him say, last Monday, that he had paid his last fine, and never intended to pay another one. He said this while his mother was with him at the jail. He has said all the time since he was put in jail that he would not make bond, and intended to lay his fine out in jail."

Cross-examined by relator: "No one had ever made bond for Cato until Mr. Daniel made bond to-day. I brought the bond, after it was made, and Henry Waller and I signed it as Mr. Daniel's sureties, and took it back to Judge Aldridge. I gave it to him before 12 o'clock to-day. I went after Mr. Daniel to get him to make bond. I did not go until after Cato's application for release in the Justice Court this morning was overruled. I heard Cato's lawyer say he would file a petition for writ of habeas corpus, and as I did not want Cato to beat paying the fine that way, I went and got Mr. Daniel to hire him out. I do not like Cato. I told Cato's lawyer that Judge Aldrich told me, that if the justice granted Cato's application for release and issued a writ for me to release him, for me not to obey it. That he knew of no law authorizing such action in Justice Courts. My sole object, in making bond to-day, was to defeat Cato's habeas corpus."

A. A. Aldrich, county judge, testified: "He (applicant) has never been given an opportunity by the Commissioners Court of discharging said fine and costs on any public improvement, road, or street. I have never hired him out before to-day."

*John I. Moore*, for relator.

No briefs for respondent.

HENDERSON, JUDGE.—The appellant was tried for a misdemeanor before a Justice Court in Houston County, and convicted, and fined $5. The costs amounted to $14.85; the total of said fine being $19.85. The defendant was committed to jail on the 17th of February, 1895, for failure to pay said fine and costs. He staid in jail till the 1st of March, 1895, when he made and filed his affidavit of inability to pay this fine and costs adjudged against him. It has been held at the present term of this court (see Ex Parte Richmond, ante, p. 112), following Ex Parte Hunt, 28 Texas Criminal Appeals, 361, that the convict, after making and filing his affidavit with the county clerk that he was too poor to pay fine and costs, was entitled to a credit of $3 a day on said fine and costs for each day that he was confined in jail after making his said affidavit. In this case, however, it is contended, that the appellant did not want to be hired out, and that, consequently, he was not entitled to the credit of $3 a day for each day that he might lie in jail. The proof appears to be conflicting upon this point, but conceding that the appellant not only did not wish to be hired out, but that he absolutely declined to be so hired out, we hold that it is immaterial. It is not optional with the county convict whether he

shall be hired out or not. It is the duty of the Commissioners Court to so hire him out. Rev. Civ. Stats., art. 3802, et seq. And where the pauper's affidavit is made, this becomes mandatory (Code of Criminal Procedure, article 816) if the convict would escape the payment of the fine and costs at the rate of $3 per day in jail. The law in this respect is intended for the benefit of the county, which pays the expense of the convict while in jail. If he is hired out, and not in jail at the expense of the taxpayers, the law allows him the full benefit of his wages to be credited on his fine and costs; but in no event is such credit to be less than 50 cents for each day. There was no necessity for the county judge to have consulted the wishes of the convict in this case, but as soon as the affidavit was made he should have hired him out, and if the convict had proven refractory, and had refused to labor, such labor could have been enforced. Rev. Civ. Stats., art. 3593. After making the affidavit in this case, the appellant was permitted by the county judge to remain in jail, and when the writ of habeas corpus was sued out in this case he had remained in jail for eight days, a length of time, at $3 per day, more than sufficient to have discharged his fine and costs.

The judgment of the lower court is reversed, and the relator, appellant in this case, is ordered discharged.

*Reversed, and relator discharged.*

Judges all present and concurring.